**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-80980-CV-MIDDLEBROOKS**

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

WELLS REAL ESTATE INVESTMENT, LLC,
JANALIE C. JOSEPH
A/K/A JANALIE C. BINGHAM, and
JEAN JOSEPH,

       Defendants.

_____/

ANDRES RIVERO, as Receiver of          ANCILLARY CASE NO. _____
WELLS REAL ESTATE INVESTMENT, LLC,
*et al.*,

       Plaintiff,

v.

BANAMERICA FINANCIAL GROUP, INC.,
CONFIA FINANCIAL CORPORATION,
FINANCIAL RESCUE & ASSOCIATES LLC,
GIANOTTI FAMILY OFFICE LLC,
L&E FINANCIAL SERVICES LLC,
WEALTH INFLUENCERS NETWORK, LLC,
ANGELA RUFF, DAVID BRADFORD, and
FRANCISCO HERRERA,

       Defendants.

_____/

**<u>COMPLAINT</u>**

Andres Rivero, the court-appointed Receiver (the "Receiver") of Wells Real Estate Investment, LLC ("Wells"), and the Relief Entities[1] (Wells and the Relief Defendants are collectively referred to as "Receivership Entities") in the above-captioned enforcement action, files this Complaint against Defendants, Banamerica Financial Group, Inc. ("Banamerica"), Confia Financial Corporation ("Confia"),  Financial Rescue & Associates LLC ("Financial Rescue"), Gianotti Family Office LLC ("GFO"), L&E Financial Services ("L&E"), Wealth Influencers Network, LLC ("Wealth Influencers"), Angela Ruff, David Bradford, and Francisco Herrera (collectively, "Defendants") and states:

## **PROCEDURAL HISTORY**

1.      On August 12, 2024, the Securities and Exchange Commission (the "SEC") filed a Complaint for Injunctive and Other Relief against the Receivership Entities, Bingham, and Joseph (collectively, the "Receivership Defendants"), in the Southern District of Florida commencing the above-styled enforcement action (the "SEC Action"). ECF No. 1. On the same day, the SEC also filed an Emergency *Ex Parte* Motion and Memorandum of Law for Appointment of Receiver (the "Receiver Motion") [ECF No. 5], and an Emergency *Ex Parte* Motion and Memorandum of Law for Asset Freeze and Other Relief (the "Asset Freeze Motion") [ECF No. 6].

---

[1] "Relief Entities" refers to: Cambridge Real Estate Management, LLC; 60 Yacht Club, LLC; 112 South Olive, LLC; 791 Parkside Home, LLC; 910 Parkside, LLC; 930 Parkside, LLC; 976 Palm Beach Square, LLC; 1070 Boca Raton Square, LLC; 2082 Paradise Palm, LLC; 2295 Corporate Blvd LLC; 4050 NW, LLC; 4100 Hospital Office, LLC; 4800 Federal, LLC; 7352 Valencia, LLC; 7483 Valencia, LLC; Boca Deerfield Properties, LLC, Daybreak Home, LLC; Globe Offices, LLC; Globe Property Offices, LLC; LW Square Office, LLC; Martiniqueâ Investments LLC a/k/a Martinique's Investments LLC; Oakland Land Property, LLC; and South Olive Office, LLC.

2.     On August 14, 2024, the Court entered a Sealed Order Granting the SEC's Receivership Motion (the "Receivership Order") [ECF No. 11], appointing Mr. Rivero as Receiver over the Receivership Entities, and an Order Granting the SEC's Asset Freeze Motion [ECF No. 12].

3.     The Receivership Order requires the Receiver to, among other things, take possession, custody and control of all the Receivership Entities' assets, establish control of the Receivership Entities' businesses, prevent dissipation of the Receivership Entities' funds or assets; collect funds due to the Receivership Entities, obtain documents and records pertaining to the Receivership Entities' assets, transactions and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. *See* Receivership Order § II, ¶7.

4.     The Receiver is authorized to, among other things, bring any action which, prior to entry of the Receivership Order, could have been brought by the Receivership Entities' officers, directors, partners, managers, trustees, and agents. *See* Receivership Order, § II, ¶ 7(I).

5.     Additionally, in furtherance of the Receiver's obligation to preserve Receivership assets, the Receivership Order grants the Receiver authority to "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property." Receivership Order at § X, ¶ 36.

6.     Accordingly, the Receivership Order authorizes and directs the Receiver to bring fraudulent transfer claims (such as this one), and such other claims as the Receiver sees fit, to preserve and increase the value of the Receivership Estate on behalf of the Receivership Entities.

3

## THE PARTIES

### The Receiver

7.      Mr. Rivero was appointed as Receiver over the Receivership Entities in the SEC Action. Mr. Rivero brings this action in his capacity as Receiver, under the authority granted to him by this Court in the SEC Action.

### The Defendants

8.      At all times, Defendant Banamerica is a corporation organized under the laws of the State of Illinois with a principal place of business in Glen Ellyn, Illinois.

9.      Banamerica is in the business of providing investment related services.

10.      At all times, Defendant Confia is a corporation organized under the laws of the State of Illinois with a principal place of business in Berwyn, Illinois.

11.      Confia is a financial services firm, which provides services related to asset management and financial planning.

12.      At all times, Defendant Financial Rescue is a limited liability company organized under the laws of the State of Illinois with a principal place of business in Berwyn, Illinois.

13.      Financial Rescue is a brokerage firm, which provides financial advising related services.

14.      At all times, Defendant GFO is a limited liability company organized under the laws of the State of Illinois with a principal place of business in Berwyn, Illinois.

15.      GFO is in the business of providing services related to asset management and financial planning.

16.      At all times, Defendant L&E is a limited liability company organized under the laws of the State of Maryland with its' principal place of business in Port Republic, Maryland.

17.      L&E is in the business of providing investment related services.

4

18. At all times, Defendant Wealth Influencers is a limited liability company organized under the laws of the State of Georgia with its' principal place of business in Milton, GA.

19. Wealth Influencers is in the investment banking and securities dealing business.

20. At all times, Defendant Angela Ruff was an individual residing in the State of Georgia.

21. Ruff is a sales agent who promoted Wells' fraudulent real estate programs to investors.

22. At all times, Defendant David Bradford was an individual residing in the State of Georgia.

23. Bradford is a sales agent who promoted Wells' fraudulent real estate programs to investors.

24. At all times, Defendant Francisco Herrera was an individual residing in the State of Illinois.

25. Herrera is a sales agent who promoted Wells' fraudulent real estate programs to investors.

## **JURISDICTION AND VENUE**

26. This action is related to the claims in the SEC Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to

Title 28, United States Code, Section 1367(a).  As such, this Court has subject matter jurisdiction over this action.

27.     Mr. Rivero was appointed as Receiver in this District. The instant Complaint is brought to accomplish the objectives of the Receivership Order and the Asset Freeze Order; and the property sought by the Receiver is located in multiple districts throughout the United States.

28.     This Court has personal jurisdiction over Defendants because Defendants conducted business with and/or received funds from the Receivership Entities, which were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Southern District of Florida. The transfers that Defendants received from the Receivership Entities were proceeds from Wells' fraudulent scheme conducted from the Southern District of Florida.

29.     The Court also has personal jurisdiction over Defendants because they regularly conduct business in the state of Florida. Further, the Defendants solicited funds from the Receivership Entities in the state of Florida, and transacted business with the Receivership Defendants in this District. In doing so, each Defendant purposefully directed its activities to the state of Florida and availed itself of the privileges of conducting activities in the state of Florida.

30.     Venue is proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Receivership Order and the Order on the Asset Freeze Motion and is therefore ancillary to the Court's exclusive jurisdiction over the Receivership Estate.  Further, the transfers and other acts described in this Complaint were made from, or occurred in, the Southern District of Florida, and some victims of the underlying scheme described in the SEC Action were located in the Southern District of Florida.

## THE RECEIVER'S STANDING TO BRING THE CLAIMS ASSERTED

31.     The Receiver has standing to bring the claims asserted in this Complaint pursuant to the Receivership Order.  *See* ECF No. 11 at Section II, ¶ 7(I).  The Receivership Order authorizes and empowers the Receiver to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver. . .". *Id*.

32.     Additionally, the Receivership Order authorizes the Receiver to: "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property." *Id.* at Section X, ¶ 36.

33.     Included among such actions are fraudulent transfer and unjust enrichment actions to recover for the benefit of the Receivership Estate amounts that Receivership Entities fraudulently transferred to third parties.

34.     The Receiver as a "creditor", and on behalf of the "creditors", of Wells, as defined in Fla. Stat. § 726.102, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act, Florida Statutes Section 726.101, *et seq*., and common law unjust enrichment pled in the alternative.

35.     Applicable case law also confers standing on the Receiver to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act seeking to redress the wrongs committed to Wells by its management in making the fraudulent transfers.  *See Wiand v. Lee*, 753 F. 3d 1194, 1202 (11th Cir. 2014).

36.     Finally, the Receiver has standing to bring this action pursuant to 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue in any district without ancillary appointment[.]" As set forth above, the Receiver has complied with the requirements set forth in 28 U.S.C. §§ 754 and 1692.

## STATUTE OF LIMITATIONS AND APPLICABLE LAW

37.     This action is brought within the pertinent statutory limitations period. Section 726.110 of the Florida Uniform Fraudulent Transfer Act ("FUFTA") provides a four-year period to seek to avoid and recover transfers from the date the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.

38.     Upon his appointment on August 14, 2024, the Receiver immediately began collecting documents including financial records, bank statements, wire transfer details, cancelled checks and business records for the Receivership Entities. The Receiver then promptly forwarded those documents to his forensic accountants who conducted a forensic accounting analysis of the transfers that the Receivership Entities made to third parties. The Receiver obtained and reviewed that forensic analysis and gained knowledge of the Receivership Entities' transfers to Defendants.

39.     The Receiver did not and could not have discovered the facts constituting the Receivership Entities' misconduct until after his appointment as Receiver in the SEC Action on August 14, 2024. And, Wells could not have stopped Bingham's or the Receivership Defendants' misconduct until it was out from under Bingham's adverse dominion and control upon the Receiver's appointment. Thus, the claims asserted here did not accrue until the date of the

8

Receiver's appointment and any applicable statutes of limitations were tolled until such date. The Receiver now brings this lawsuit less than one year from the date on which he was appointed.

40.     The Receiver also seeks to avoid and recover constructive fraudulent transfers under section 726.105(1)(b) of FUFTA that were made to Defendants within the four-year period prior to the date upon which the Receiver filed this Complaint.

41.     The Receiver seeks damages for unjust enrichment under Florida common law for the transfers made to Defendants within the four-year period prior to the date upon which the Receiver filed this Complaint.

<b><u>FACTUAL ALLEGATIONS</u></b>

## I.     Wells Real Estate Investment Scheme

42.     Janalie Bingham organized Wells in 2017 as a Wyoming Limited Liability Company with its principal place of business in West Palm Beach, Florida. Bingham served as Wells' Chief Executive Officer and was its' sole member.

43.     Jean Joseph is Bingham's husband and maintained operational control with Bingham over the rest of the Receivership Entities, including Wells.  Joseph is a felon who was previously convicted of wire fraud and sentenced to 15 months in prison and was thereafter placed on three years of supervised release.

44.     From at least January 2020 to at least May 2024 (the "Relevant Period"), Bingham and Joseph used Wells, and in some instances the other Receivership Entities, to raise at least $56 million from at least 660 investors located across the country through a fraudulent offering of promissory notes, and misrepresenting that Wells has a real estate portfolio amounting to $450 million in an effort to solicit individual investors to buy into Wells' real estate development programs (the "Fraudulent Scheme").

45.     Through Wells, Bingham and Joseph developed a network of sales agents to assist them with misrepresenting to investors the true nature of Wells' real estate portfolio. In reality, the Receivership Entities' bank records—over which Bingham had sole control—together with the relevant property records, demonstrated that Wells and the Receivership Entities had acquired 34 properties valued at approximately $46 million at the time of acquisition.

46.     Publicly available property records reveal that the majority of these properties are heavily encumbered with mortgages, and it appears that the balance of the purchase prices were paid for with investor funds.

47.     By the time the Receiver was appointed, most of the properties had defaulted on their mortgages and were in the midst of foreclosure proceedings. In addition to mortgage lenders, many of the properties also were indebted either to Condominium Associations or Homeowner Associations.

48.     Through Wells, Bingham and Joseph also misrepresented the properties' ability to generate income. According to Wells' promotional materials, income generated from the properties was to be used to provide the investors' return on their notes. However, the real properties generated little to no income and any income was insufficient for Wells to pay promised returns to investors.

49.     As a result, Wells, through its sales agents, procured and relied on collecting and soliciting additional investor funds to make interest payments to existing investors in a Ponzi-like fashion. Specifically, Wells had a net cash outflow of roughly $23 million, and, since January 2020, the Receivership Defendants diverted approximately $10 million of investor funds to make Ponzi-like interest payments to existing investors and to satisfy Note redemptions.

50.     Bingham and Joseph transferred at least $28 million of investor funds to brokerage firms, where they engaged in speculative options trading and lost roughly $12 million of investor funds. Bingham and Joseph also used $6.8 million of investor funds to pay undisclosed commissions to sales agents and make interest payments and redemptions to investors. Bingham and Joseph also misappropriated roughly $1.8 million for personal expenses and transferred at least $1.9 million of Wells-financed real estate to Bingham. None of the above material facts were disclosed to investors, nor did Bingham and Joseph disclose that Joseph, a convicted felon on supervised release, was a principal of Wells.

51.     The Ponzi scheme commenced at the latest in 2020 when Wells began paying interest and principal payments on Notes using the funds of newer investors.

52.     Based on the SEC's and the Receiver's analysis of Wells's operations and records, Wells's business model, as implemented by Bingham and Joseph, was not sustainable, feasible, or profitable.

**II.     Findings of Fraud and Permanent Injunction Against Wells in the SEC Action**

53.     As a result of this fraudulent conduct, and the activity explained in further detail in the SEC's complaint, the SEC commenced the SEC Action against the Wells Defendants that resulted in entry of the Asset Freeze Order and Appointment Order containing preliminary findings that the Receivership Defendants likely participated in a fraudulent securities scheme.

54.     In addition, in the SEC Action, this Court entered judgments with permanent injunctive relief against the Receivership Defendants enjoining the Receivership Defendants from violating several provisions of the Securities Act and the Exchange Act  (the "Consent Judgments"). *See* SEC Action ECF Nos. 71, 81, and 83.

55.     At all times, Bingham and Joseph controlled and operated the Receivership Entities as a means to carry out the Fraudulent Scheme, thereby causing the Receivership Entities to commit the above-listed violations of federal securities laws and rules, in a breach of their fiduciary duties to the Receivership Entities.

56.     Receivership Entities were under the control of Bingham and Joseph until the appointment of the Receiver and accordingly could not seek recovery of the fraudulent transfers prior to that point. Moreover, the Receiver was not authorized to pursue recovery of the fraudulent transfers until entry of the Receivership Order on August 14, 2024.

57.     Receivership Entities made the transfers at Bingham and Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of the Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

### III.     The Insolvency of Wells and the Receivership Entities

58.     As a result of operating the Fraudulent Scheme, Wells and the Receivership Entities were insolvent, undercapitalized, and operating at a loss. During all relevant times, Receivership Entities did not have sufficient assets to pay their debts to individual investors and creditors as those debts became due.

59.     Because most of the Wells' investors have not received the return of their investment or all of the amounts due to them under the Wells Notes, these investors will have significant claims against the Receivership Estate to recover their investments.

### IV.     Transfers to Defendants

60.     From February 17, 2021, through April 5, 2023, Receivership Entities made approximately 239 transfers of funds in the total amount of $1,011,356.61 to Banamerica. The

transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "Banamerica Transfers"). *See* Summary of Banamerica Transfers, attached as **Exhibit A**.

61.     From March 21, 2021, through May 25, 2022, Receivership Entities made approximately 78 transfers of funds in the total amount of $290,713.19 to Confia. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "Confia Transfers"). *See* Summary of Confia Transfers, attached as **Exhibit B**.

62.     From March 19, 2021, through July 6, 2023, Receivership Entities made approximately 52 transfers of funds in the total amount of $201,570.05 to Financial Rescue. The transfers originated from Receivership Entities' bank accounts located in Florida or Wells' bill.com account (collectively, the "Financial Rescue Transfers"). *See* Summary of the Financial Rescue Transfers, attached as **Exhibit C**.

63.     From May 22, 2023, through December 26, 2023, Receivership Entities made approximately 26 transfers of funds in the total amount of $113,438.72 to GFO. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively the "GFO Transfers"). *See* Summary of the GFO Transfers, attached as **Exhibit D**.

64.     From March 19, 2021, through February 15, 2023, Receivership Entities made approximately 17 transfers of funds in the total amount of $76,828.17 to L&E. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "L&E Transfers"). *See* Summary of the L&E Transfers, attached as **Exhibit E**.

65.     From April 14, 2021, through October 10, 2023, Receivership Entities made approximately 333 transfers of funds in the total amount of $607,907.38 to Wealth Influencers. The transfers originated from Receivership Entities' bank accounts located in Florida

(collectively, the "Wealth Influencers Transfers"). *See* Summary of the Wealth Influencers Transfers, attached as **Exhibit F**.

66.     From March 2, 2021, through August 25, 2023, Receivership Entities made approximately 97 transfers of funds in the total amount of $123,089.63 to Angela Ruff. The transfers originated from Wells' bank accounts located in Florida (collectively, the "Ruff Transfers"). *See* Summary of the Ruff Transfers, attached as **Exhibit G**.

67.     From October 22, 2021, through July 7, 2022, Receivership Entities made approximately 11 transfers of funds in the total amount of $109,250.59 to David Bradford. The transfers originated from Receivership Entities' bank accounts located in Florida or Wells' bill.com accounts (collectively, the "Bradford Transfers"). *See* Summary of the Bradford Transfers, attached as **Exhibit H**.

68.     From June 6, 2022, through November 16, 2022, Receivership Entities made approximately 70 transfers of funds in the total amount of $194,280.89 to Francisco Herrera. The transfers originated from Receivership Entities' accounts (collectively the "Herrera Transfers"). *See* Summary of the Herrera Transfers, attached as **Exhibit I**.

69.     The Banamerica Transfers, the Confia Transfers, the Financial Rescue Transfers, the GFO Transfers, the L&E Transfers, the Wealth Influencers Transfers, the Ruff Transfers, the Bradford Transfers, and the Herrera Transfers are collectively referred to as the "Transfers."

70.     The funds comprising the Transfers to Defendants were funds that Receivership Defendants fraudulently procured from investors and/or creditors in the form of investments, fees, and/or other payments made in connection with the Notes.

71.     Defendants received the Transfers without providing reasonably equivalent value to Receivership Entities in exchange for those Transfers.

14

72.     Further, any services that Defendants may have provided to the Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

73.     When the Receivership Entities made the Transfers to Defendants, the Receivership Entities intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

74.     Thus, Receivership Entities had the actual intent to delay, hinder, or defraud investors and creditors, and made the Transfers to delay, hinder, or defraud investors and creditors.

75.     Defendants assisted the Receivership Defendants to solicit these defrauded investors and/or creditors to purchase the Notes and received the Transfers as commissions, fees and/or other payments for such assistance, without providing reasonably equivalent value to the Receivership Defendants in exchange for those Transfers.

76.     Receivership Entities, and thereby the Receivership Estate, has been damaged significantly as a direct and proximate result of the Transfers made to Defendants. Such damages include, but are not limited to, losses due to the dissipation of investor and customer funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

77.     Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from Receivership Entities as a result of the fraudulent transfers to, and unjust enrichment of, Defendants.

78.     Because Receivership Entities were operated from Florida, the transactions with Defendants were carried out in Florida, and the Transfers came from bank accounts located in Florida, Florida law applies to the claims brought in this Complaint.

79.     All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

**COUNT I**
**Fraudulent Transfer under § 726.105(1)(a), Fla. Stat.,**
**Florida Uniform Fraudulent Transfer Act**

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

80.     This is a claim to avoid and recover a fraudulent transfer pursuant to Florida Statutes Section 726.105(a)(1).

81.     As detailed above, the Receivership Entities made the Transfers to Defendants.

82.     Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

83.     Any services that Defendants may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

84.     At the time that the Receivership Entities made the Transfers, they were operating a fraudulent scheme, were insolvent, and were engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

85. When Receivership Entities made the Transfers to Defendants, Receivership Entities intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

86. Receivership Entities made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

87. At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

88. Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

89. Receivership Entities had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud creditors.

90. Consequently, the Transfers were inherently fraudulent pursuant to Florida Statutes Section 726.105(1)(a).

91. Because the Transfers were fraudulent under Florida Statutes Section 726.105(1)(a), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

92. As a direct and proximate result of the Receivership Entities fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

WHEREFORE, the Receiver respectfully requests that the Court enter judgment against each Defendant: (1) determining that the Transfers from the Receivership Entities to each

17

Defendant were fraudulent and avoiding those Transfers;  (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

**COUNT II**
**Fraudulent Transfer under § 726.105(1)(b), Fla. Stat.,**
**Florida Uniform Fraudulent Transfer Act**

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

93.    This is a claim to avoid and recover a fraudulent transfer pursuant to Florida Statutes Section 726.105(1)(b).

94.    As detailed above, the Receivership Entities made the Transfers to Defendants.

95.    Defendants received the Transfers from Receivership Defendants without providing reasonably equivalent value in exchange for the Transfers.

96.    Any services that Defendants may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

97.    Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendants, as detailed above.

98.    At the time that Receivership Entities made the Transfers to Defendants, Receivership Entities were operating a fraudulent scheme, were insolvent, and were engaged in a

18

business or transaction for which its remaining assets were unreasonably small in relation to the business.

99.     Receivership Entities made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

100.    At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

101.    Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

102.    When Receivership Entities made the Transfers to Defendants, Wells intended to incur, or believed or reasonably should have believed that they would incur, debts beyond its ability to pay them as they became due.

103.    Because the Transfers were fraudulent under Florida Statutes Section 726.105(1)(b), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

104.    As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

WHEREFORE, the Receiver respectfully requests that the Court enter judgment against each Defendant: (1) determining that the Transfers from Receivership Entities to each Defendant were fraudulent and avoiding those Transfers;  (2) entering a money judgment against Defendants

in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

**COUNT III**
**Fraudulent Transfer under § 726.106(1), Fla. Stat.,**
**Florida Uniform Fraudulent Transfer Act**

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

105.   This is a claim to avoid and recover fraudulent transfers, pursuant to Florida Statutes Section 726.106(1).

106.   As detailed above, the Receivership Entities made the Transfers to Defendants.

107.   Defendants received the Transfers from Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

108.   Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendants, as detailed above. Indeed, Defendants made no payments and provided no other value to Wells or the Receivership Estate.

109.   And the services that Defendants purported to provide to Receivership Entities or Receivership Estate did not provide any value to the Receivership Entities because they only facilitated the Fraudulent Scheme. All the funds that Defendants received from the Receivership Entities were derived from the investors that Receivership Defendants had defrauded. Therefore, Defendants profited from Receivership Defendants' fraudulent scheme at the expense of the investors that the Receivership Defendants defrauded.

110.    Receivership Entities had creditors whose claims arose before Receivership Entities made the Transfers to Defendants.

20

111.   When Receivership Entities made the Transfers to Defendants, the assets remaining in Receivership Entities' business were unreasonably small in relation to the business or transaction.

112.   When Receivership Entities made the Transfers to Defendants, Receivership Entities were operating a fraudulent scheme and thus intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

113.   Because the Transfers are fraudulent under Florida Statutes Section 726.106(1), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

114.   As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the  individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

WHEREFORE, the Receiver respectfully requests that the Court enter judgment against each Defendant: (1) determining that the Transfers from the Receivership Defendants to each Defendant were fraudulent and avoiding those Transfers;  (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT IV
### Unjust Enrichment as to the Transfers

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

21

115. The Receivership Entities conferred a benefit on Defendants when they made the Transfers to Defendants, all of which were derived from defrauded investors of the Fraudulent Scheme.

116. Defendants had knowledge of the benefit they received from Receivership Entities as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

117. It is inherently unfair and inequitable that the funds of investors defrauded in the Receivership Entities' fraudulent scheme are retained by and used to personally benefit Defendants, rather than being returned to the Receivership Estate for the benefit of all the defrauded investors.

118. As a direct and proximate result of Defendants' retention of the Transfers that the Receivership Entities fraudulently transferred to each Defendant, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendants should return the funds it received from the Receivership Entities, and any assets it may have acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

WHEREFORE, the Receiver respectfully requests that the Court enter judgment against each Defendant: (1) determining that each Defendant was unjustly enriched by virtue of their receipt of the Transfers which they received from the Receivership Entities; (2) entering a money judgment against each Defendant, in the full amount of the Transfers they received, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding the Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

The Receiver demands trial by jury on any and all issues in this action triable by a jury.


Dated: August 13, 2025.

Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for the Receiver*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

By: /s/ *Amanda Fernandez*
         Amanda Fernandez
         Fla. Bar No. 106931
         afernandez@riveromestre.com
         Jorge A. Mestre
         Fla. Bar No. 88145
         jmestre@riveromestre.com
         Taylor Diaz
         Fla. Bar No. 1040706
         tdiaz@riveromestre.com