# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 9:25-cv-81001-MIDDLEBROOKS/MATTHEWMAN

ANDRES RIVERO, as Receiver of
WELLS REAL ESTATE INVESTMENT, LLC,
et al.,

      Plaintiff,

          v.

BANAMERICA FINANCIAL GROUP, INC.,
CONFIA FINANCIAL CORPORATION,
FINANCIAL RESCUE & ASSOCIATES LLC,
GIANOTTI FAMILY OFFICE LLC,
L&E FINANCIAL SERVICES LLC,
WEALTH INFLUENCERS NETWORK, LLC,
ANGELA RUFF, DAVID BRADFORD, and
FRANCISCO HERRERA,

      Defendants.

_____/

## ANSWER TO COMPLAINT

Defendants Financial Rescue & Associates LLC ("Financial Rescue") and Giannotti Family Office LLC ("GFO" and, collectively with Financial Rescue, the "Giannotti Defendants"), file this Answer to the Complaint filed against them by Andres Rivero, the court-appointed Receiver (the "Receiver") of Wells Real Estate Investment, LLC ("Wells") and the Relief Entities, as defined in the Complaint (Wells and the Relief Defendants are collectively referred to as "Receivership Entities"). As their Answer, the Giannotti Defendants state:

## PROCEDURAL HISTORY

1.      On August 12, 2024, the Securities and Exchange Commission (the "SEC") filed a Complaint for Injunctive and Other Relief against the

Receivership Entities, Bingham, and Joseph (collectively, the "Receivership Defendants"), in the Southern District of Florida commencing the above-styled enforcement action (the "SEC Action"). ECF No. 1. On the same day, the SEC also filed an Emergency Ex Parte Motion and Memorandum of Law for Appointment of Receiver (the "Receiver Motion") [ECF No. 5], and an Emergency Ex Parte Motion and Memorandum of Law for Asset Freeze and Other Relief (the "Asset Freeze Motion") [ECF No. 6].

**ANSWER:**   Admitted.

2.     On August 14, 2024, the Court entered a Sealed Order Granting the SEC's Receivership Motion (the "Receivership Order") [ECF No. 11], appointing Mr. Rivero as Receiver over the Receivership Entities, and an Order Granting the SEC's Asset Freeze Motion [ECF No. 12].

**ANSWER:**   Admitted.

3.     The Receivership Order requires the Receiver to, among other things, take possession, custody and control of all the Receivership Entities' assets, establish control of the Receivership Entities' businesses, prevent dissipation of the Receivership Entities' funds or assets; collect funds due to the Receivership Entities, obtain documents and records pertaining to the Receivership Entities' assets, transactions and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. See Receivership Order § II, ¶ 7.

**ANSWER:**   Admitted.

4.     The Receiver is authorized to, among other things, bring any action which, prior to entry of the Receivership Order, could have been brought by the Receivership Entities' officers, directors, partners, managers, trustees, and agents. *See* Receivership Order, § II, 7(I).

**ANSWER:**   Admitted.

5.     Additionally, in furtherance of the Receiver's obligation to preserve Receivership assets, the Receivership Order grants the Receiver authority to "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property." Receivership Order at § X, ¶ 36.

**ANSWER:**   Admitted.

6.     Accordingly, the Receivership Order authorizes and directs the Receiver to bring fraudulent transfer claims (such as this one), and such other

claims as the Receiver sees fit, to preserve and increase the value of the Receivership Estate on behalf of the Receivership Entities.

**ANSWER:**   The Giannotti Defendants admit that the Receivership Order authorizes the Receiver to bring certain types of claims, but deny that there is a basis for the Receiver to bring such claims against them. The Giannotti Defendants deny the remaining allegations of this paragraph.

## THE PARTIES

### The Receiver

7.      Mr. Rivero was appointed as Receiver over the Receivership Entities in the SEC Action. Mr. Rivero brings this action in his capacity as Receiver, under the authority granted to him by this Court in the SEC Action.

**ANSWER:**   Admitted.

### The Defendants

8.      At all times, Defendant Banamerica is a corporation organized under the laws of the State of Illinois with a principal place of business in Glen Ellyn, Illinois.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

9.      Banamerica is in the business of providing investment related services.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

10.      At all times, Defendant Confia is a corporation organized under the laws of the State of Illinois with a principal place of business in Berwyn, Illinois.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

11.     Confia is a financial services firm, which provides services related to asset management and financial planning.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

12.     At all times, Defendant Financial Rescue is a limited liability company organized under the laws of the State of Illinois with a principal place of business in Berwyn, Illinois.

**ANSWER:**     Admitted.

13.     Financial Rescue is a brokerage firm, which provides financial advising related services.

**ANSWER:**     The Giannotti Defendants admit that Financial Rescue is an insurance brokerage agency, which provides life and health insurance related products and services. The Giannotti Defendants deny the remaining allegations of this paragraph.

14.     At all times, Defendant GFO is a limited liability company organized under the laws of the State of Illinois with a principal place of business in Berwyn, Illinois.

**ANSWER:**     Admitted.

15.     GFO is in the business of providing services related to asset management and financial planning.

**ANSWER:**     Denied.

16.     At all times, Defendant L&E is a limited liability company organized under the laws of the State of Maryland with its' principal place of business in Port Republic, Maryland.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

17.     L&E is in the business of providing investment related services.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

18.     At all times, Defendant Wealth Influencers is a limited liability company organized under the laws of the State of Georgia with its' principal place of business in Milton, GA.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

19.     Wealth Influencers is in the investment banking and securities dealing business.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

20.     At all times, Defendant Angela Ruff was an individual residing in the State of Georgia.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

21.     Ruff is a sales agent who promoted Wells' fraudulent real estate programs to investors.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

22.     At all times, Defendant David Bradford was an individual residing in the State of Georgia.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

23.     Bradford is a sales agent who promoted Wells' fraudulent real estate programs to investors.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

24.     At all times, Defendant Francisco Herrera was an individual residing in the State of Illinois.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

25.     Herrera is a sales agent who promoted Wells' fraudulent real estate programs to investors.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

## JURISDICTION AND VENUE

26.     This action is related to the claims in the SEC Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to Title 28, United States Code, Section 1367(a). As such, this Court has subject matter jurisdiction over this action.

**ANSWER:**   Admitted.

27.     Mr. Rivero was appointed as Receiver in this District. The instant Complaint is brought to accomplish the objectives of the Receivership Order and the Asset Freeze Order; and the property sought by the Receiver is located in multiple districts throughout the United States.

**ANSWER:**   The Giannotti Defendants admit that Mr. Rivero was appointed as Receiver in this District and that the property sought by the Receiver is located in multiple districts throughout the United States. The Giannotti Defendants deny the remaining allegations of this paragraph.

28.     This Court has personal jurisdiction over Defendants because Defendants conducted business with and/or received funds from the Receivership Entities, which were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Southern District of Florida. The transfers that Defendants received from the Receivership Entities were proceeds from Wells' fraudulent scheme conducted from the Southern District of Florida.

**ANSWER:**    The Giannotti Defendants admit that they conducted business with and/or received funds from the Receivership Entities. The Giannotti Defendants deny the remaining allegations of this paragraph.

29.    The Court also has personal jurisdiction over Defendants because they regularly conduct business in the state of Florida. Further, the Defendants solicited funds from the Receivership Entities in the state of Florida, and transacted business with the Receivership Defendants in this District. In doing so, each Defendant purposefully directed its activities to the state of Florida and availed itself of the privileges of conducting activities in the state of Florida.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

30.    Venue is proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Receivership Order and the Order on the Asset Freeze Motion and is therefore ancillary to the Court's exclusive jurisdiction over the Receivership Estate. Further, the transfers and other acts described in this Complaint were made from, or occurred in, the Southern District of Florida, and some victims of the underlying scheme described in the SEC Action were located in the Southern District of Florida.

**ANSWER:**    The Giannotti Defendants admit that this action is brought pursuant to the Receivership Order and the Order on the Asset Freeze Motion and that some victims of the underlying scheme alleged in the SEC Action were located in the Southern District of Florida. The Giannotti Defendants deny the remaining allegations of this paragraph.

## THE RECEIVER'S STANDING TO BRING THE CLAIMS ASSERTED

31.    The Receiver has standing to bring the claims asserted in this Complaint pursuant to the Receivership Order. *See* ECF No. 11 at Section II, 7(I). The Receivership Order authorizes and empowers the Receiver to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver...". *Id.*

**ANSWER:**    The Giannotti Defendants admit that the Receivership Order authorizes the Receiver to bring certain types of actions, as noted in this paragraph. The Giannotti Defendants deny the remaining allegations of this paragraph.

32.    Additionally, the Receivership Order authorizes the Receiver to: "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property." *Id.* at Section X, ¶ 36.

**ANSWER:**    Admitted.

33.    Included among such actions are fraudulent transfer and unjust enrichment actions to recover for the benefit of the Receivership Estate amounts that Receivership Entities fraudulently transferred to third parties.

**ANSWER:**    Admitted.

34.    The Receiver as a "creditor", and on behalf of the "creditors", of Wells, as defined in Fla. Stat. § 726.102, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act, Florida Statutes Section 726.101, *et seq.,* and common law unjust enrichment pled in the alternative.

**ANSWER:**    Denied.

35.    Applicable case law also confers standing on the Receiver to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act seeking to redress the wrongs committed to Wells by its management in making the fraudulent transfers. *See Wiand v. Lee,* 753 F. 3d 1194, 1202 (11th Cir. 2014).

**ANSWER:**    The Giannotti Defendants admit that *Wiand v. Lee* confers standing on equitable receivers to bring fraudulent transfer claims. The Giannotti Defendants deny the remaining allegations of this paragraph.

36.    Finally, the Receiver has standing to bring this action pursuant to 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall ... be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue

8

in any district without ancillary appointment[.]" As set forth above, the Receiver has complied with the requirements set forth in 28 U.S.C. §§ 754 and 1692.

**ANSWER:**   The Giannotti Defendants admit that 28 U.S.C. § 754 provides as quoted.

The Giannotti Defendants deny the remaining allegations of this paragraph.

## STATUTE OF LIMITATIONS AND APPLICABLE LAW

37.   This action is brought within the pertinent statutory limitations period. Section 726.110 of the Florida Uniform Fraudulent Transfer Act ("FUFTA") provides a four-year period to seek to avoid and recover transfers from the date the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.

**ANSWER:**   Admitted.

38.   Upon his appointment on August 14, 2024, the Receiver immediately began collecting documents including financial records, bank statements, wire transfer details, cancelled checks and business records for the Receivership Entities. The Receiver then promptly forwarded those documents to his forensic accountants who conducted a forensic accounting analysis of the transfers that the Receivership Entities made to third parties. The Receiver obtained and reviewed that forensic analysis and gained knowledge of the Receivership Entities' transfers to Defendants.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

39.   The Receiver did not and could not have discovered the facts constituting the Receivership Entities' misconduct until after his appointment as Receiver in the SEC Action on August 14, 2024. And, Wells could not have stopped Bingham's or the Receivership Defendants' misconduct until it was out from under Bingham's adverse dominion and control upon the Receiver's appointment. Thus, the claims asserted here did not accrue until the date of the Receiver's appointment and any applicable statutes of limitations were tolled until such date. The Receiver now brings this lawsuit less than one year from the date on which he was appointed.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

40.   The Receiver also seeks to avoid and recover constructive fraudulent transfers under section 726.105(1)(b) of FUFTA that were made to

Defendants within the four-year period prior to the date upon which the Receiver filed this Complaint.

**ANSWER:**     The Giannotti Defendants admit that the Complaint seeks to avoid and recover transfers made within the four-year period prior to the date upon which the Receiver filed the Complaint. The Giannotti Defendants deny the remaining allegations of this paragraph.

41.     The Receiver seeks damages for unjust enrichment under Florida common law for the transfers made to Defendants within the four-year period prior to the date upon which the Receiver filed this Complaint.

**ANSWER:**     The Giannotti Defendants admit that the Complaint seeks damages under Florida common law for transfers made within the four-year period prior to the date upon which the Receiver filed the Complaint. The Giannotti Defendants deny the remaining allegations of this paragraph.

## FACTUAL ALLEGATIONS

### I.     Wells Real Estate Investment Scheme

42.     Janalie Bingham organized Wells in 2017 as a Wyoming Limited Liability Company with its principal place of business in West Palm Beach, Florida. Bingham served as Wells' Chief Executive Officer and was its' sole member.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

43.     Jean Joseph is Bingham's husband and maintained operational control with Bingham over the rest of the Receivership Entities, including Wells. Joseph is a felon who was previously convicted of wire fraud and sentenced to 15 months in prison and was thereafter placed on three years of supervised release.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

44.     From at least January 2020 to at least May 2024 (the "Relevant Period"), Bingham and Joseph used Wells, and in some instances the other Receivership Entities, to raise at least $56 million from at least 660 investors

located across the country through a fraudulent offering of promissory notes, and misrepresenting that Wells has a real estate portfolio amounting to $450 million in an effort to solicit individual investors to buy into Wells' real estate development programs (the "Fraudulent Scheme").

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

45.   Through Wells, Bingham and Joseph developed a network of sales agents to assist them with misrepresenting to investors the true nature of Wells' real estate portfolio. In reality, the Receivership Entities' bank records — over which Bingham had sole control — together with the relevant property records, demonstrated that Wells and the Receivership Entities had acquired 34 properties valued at approximately $46 million at the time of acquisition.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

46.   Publicly available property records reveal that the majority of these properties are heavily encumbered with mortgages, and it appears that the balance of the purchase prices were paid for with investor funds.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

47.   By the time the Receiver was appointed, most of the properties had defaulted on their mortgages and were in the midst of foreclosure proceedings. In addition to mortgage lenders, many of the properties also were indebted either to Condominium Associations or Homeowner Associations.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

48.   Through Wells, Bingham and Joseph also misrepresented the properties' ability to generate income. According to Wells' promotional materials, income generated from the properties was to be used to provide the investors' return on their notes. However, the real properties generated little to no income and any income was insufficient for Wells to pay promised returns to investors.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

49.     As a result, Wells, through its sales agents, procured and relied on collecting and soliciting additional investor funds to make interest payments to existing investors in a Ponzi-like fashion. Specifically, Wells had a net cash outflow of roughly $23 million, and, since January 2020, the Receivership Defendants diverted approximately $10 million of investor funds to make Ponzi-like interest payments to existing investors and to satisfy Note redemptions.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

50.     Bingham and Joseph transferred at least $28 million of investor funds to brokerage firms, where they engaged in speculative options trading and lost roughly $12 million of investor funds. Bingham and Joseph also used $6.8 million of investor funds to pay undisclosed commissions to sales agents and make interest payments and redemptions to investors. Bingham and Joseph also misappropriated roughly $1.8 million for personal expenses and transferred at least $1.9 million of Wells-financed real estate to Bingham. None of the above material facts were disclosed to investors, nor did Bingham and Joseph disclose that Joseph, a convicted felon on supervised release, was a principal of Wells.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

51.     The Ponzi scheme commenced at the latest in 2020 when Wells began paying interest and principal payments on Notes using the funds of newer investors.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

52.     Based on the SEC's and the Receiver's analysis of Wells's operations and records, Wells's business model, as implemented by Bingham and Joseph, was not sustainable, feasible, or profitable.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

## II.     Findings of Fraud and Permanent Injunction Against Wells in the SEC Action

53.     As a result of this fraudulent conduct, and the activity explained in further detail in the SEC's complaint, the SEC commenced the SEC Action against the Wells Defendants that resulted in entry of the Asset Freeze Order and

Appointment Order containing preliminary findings that the Receivership Defendants likely participated in a fraudulent securities scheme.

**ANSWER:**   The Giannotti Defendants admit that the SEC commenced the SEC Action and obtained entry of the Asset Freeze Order and Appointment Order, which contain certain preliminary factual findings. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

54.   In addition, in the SEC Action, this Court entered judgments with permanent injunctive relief against the Receivership Defendants enjoining the Receivership Defendants from violating several provisions of the Securities Act and the Exchange Act (the "Consent Judgments"). *See* SEC Action ECF Nos. 71, 81, and 83.

**ANSWER:**   Admitted.

55.   At all times, Bingham and Joseph controlled and operated the Receivership Entities as a means to carry out the Fraudulent Scheme, thereby causing the Receivership Entities to commit the above-listed violations of federal securities laws and rules, in a breach of their fiduciary duties to the Receivership Entities.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

56.   Receivership Entities were under the control of Bingham and Joseph until the appointment of the Receiver and accordingly could not seek recovery of the fraudulent transfers prior to that point. Moreover, the Receiver was not authorized to pursue recovery of the fraudulent transfers until entry of the Receivership Order on August 14, 2024.

**ANSWER:**   The Giannotti Defendants admit that the Receiver was not authorized to act until entry of the Receivership Order. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

57.   Receivership Entities made the transfers at Bingham and Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of the Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

### III.   The Insolvency of Wells and the Receivership Entities

58.   As a result of operating the Fraudulent Scheme, Wells and the Receivership Entities were insolvent, undercapitalized, and operating at a loss. During all relevant times, Receivership Entities did not have sufficient assets to pay their debts to individual investors and creditors as those debts became due.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

59.   Because most of the Wells' investors have not received the return of their investment or all of the amounts due to them under the Wells Notes, these investors will have significant claims against the Receivership Estate to recover their investments.

**ANSWER:**   The Giannotti Defendants admit that many of the Wells' investors did not receive the return of their investment and, as a result, have claims against the Receivership Estate. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

### IV.   Transfers to Defendants

60.   From February 17, 2021, through April 5, 2023, Receivership Entities made approximately 239 transfers of funds in the total amount of $1,011,356.61 to Banamerica. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "Banamerica Transfers"). *See* Summary of Banamerica Transfers, attached as **Exhibit A.**

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

61.   From March 21, 2021, through May 25, 2022, Receivership Entities made approximately 78 transfers of funds in the total amount of$290,713.19 to Confia. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "Confia Transfers"). *See* Summary of Confia Transfers, attached as **Exhibit B.**

14

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

62.     From March 19, 2021, through July 6, 2023, Receivership Entities made approximately 52 transfers of funds in the total amount of $201,570.05 to Financial Rescue. The transfers originated from Receivership Entities' bank accounts located in Florida or Wells' bill.com account (collectively, the "Financial Rescue Transfers"). *See* Summary of the Financial Rescue Transfers, attached as **Exhibit C.**

**ANSWER:**   Admitted.

63.     From May 22, 2023, through December 26, 2023, Receivership Entities made approximately 26 transfers of funds in the total amount of $113,438.72 to GFO. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively the "GFO Transfers"). *See* Summary of the GFO Transfers, attached as **Exhibit D.**

**ANSWER:**   Admitted.

64.     From March 19, 2021, through February 15, 2023, Receivership Entities made approximately 17 transfers of funds in the total amount of $76,828.17 to L&E. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "L&E Transfers"). *See* Summary of the L&E Transfers, attached as **Exhibit E.**

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

65.     From April 14, 2021, through October 10, 2023, Receivership Entities made approximately 333 transfers of funds in the total amount of $607,907.38 to Wealth Influencers. The transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "Wealth Influencers Transfers"). *See* Summary of the Wealth Influencers Transfers, attached as **Exhibit F.**

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

66.     From March 2, 2021, through August 25, 2023, Receivership Entities made approximately 97 transfers of funds in the total amount of $123,089.63 to Angela Ruff. The transfers originated from Wells' bank accounts located in Florida (collectively, the "Ruff Transfers"). *See* Summary of the Ruff Transfers, attached as **Exhibit G.**

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

67.     From October 22, 2021, through July 7, 2022, Receivership Entities made approximately 11 transfers of funds in the total amount of $109,250.59 to David Bradford. The transfers originated from Receivership Entities' bank accounts located in Florida or Wells' bill.com accounts (collectively, the "Bradford Transfers"). *See* Summary of the Bradford Transfers, attached as **Exhibit H.**

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

68.     From June 6, 2022, through November 16, 2022, Receivership Entities made approximately 70 transfers of funds in the total amount of $194,280.89 to Francisco Herrera. The transfers originated from Receivership Entities' accounts (collectively the "Herrera Transfers"). *See* Summary of the Herrera Transfers, attached as **Exhibit I.**

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

69.     The Banamerica Transfers, the Confia Transfers, the Financial Rescue Transfers, the GFO Transfers, the L&E Transfers, the Wealth Influencers Transfers, the Ruff Transfers, the Bradford Transfers, and the Herrera Transfers are collectively referred to as the "Transfers."

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

70.     The funds comprising the Transfers to Defendants were funds that Receivership Defendants fraudulently procured from investors and/or creditors in the form of investments, fees, and/or other payments made in connection with the Notes.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

71.     Defendants received the Transfers without providing reasonably equivalent value to Receivership Entities in exchange for those Transfers.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

72.    Further, any services that Defendants may have provided to the Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

73.    When the Receivership Entities made the Transfers to Defendants, the Receivership Entities intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

74.    Thus, Receivership Entities had the actual intent to delay, hinder, or defraud investors and creditors, and made the Transfers to delay, hinder, or defraud investors and creditors.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

75.    Defendants assisted the Receivership Defendants to solicit these defrauded investors and/or creditors to purchase the Notes and received the Transfers as commissions, fees and/or other payments for such assistance, without providing reasonably equivalent value to the Receivership Defendants in exchange for those Transfers.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

76.    Receivership Entities, and thereby the Receivership Estate, has been damaged significantly as a direct and proximate result of the Transfers made to Defendants. Such damages include, but are not limited to, losses due to the dissipation of investor and customer funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

77.    Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from Receivership Entities as a result of the fraudulent transfers to, and unjust enrichment of, Defendants.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

78.    Because Receivership Entities were operated from Florida, the transactions with Defendants were carried out in Florida, and the Transfers came from bank accounts located in Florida, Florida law applies to the claims brought in this Complaint.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

79.     All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

<u>**COUNTI**</u>
**FRAUDULENT TRANSFER UNDER§ 726.LOS(L)(A), FLA. STAT., FLORIDA UNIFORM FRAUDULENT TRANSFER ACT**

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

**ANSWER:**   The Giannotti Defendants incorporate their responses to the allegations in paragraphs 1 through 79 of the Complaint as if set forth here.

80.     This is a claim to avoid and recover a fraudulent transfer pursuant to Florida Statutes Section 726.105(a)(l).

**ANSWER:**   Admitted.

81.     As detailed above, the Receivership Entities made the Transfers to Defendants.

**ANSWER:**   The Giannotti Defendants incorporate their responses to the detailed allegations above as if set forth here. The Giannotti Defendants deny the remaining allegations of this paragraph.

82.     Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

83.    Any services that Defendants may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

84.    At the time that the Receivership Entities made the Transfers, they were operating a fraudulent scheme, were insolvent, and were engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

85.    When Receivership Entities made the Transfers to Defendants, Receivership Entities intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

86.    Receivership Entities made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

**ANSWER:**    The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

87.    At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

88.   Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

89.   Receivership Entities had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud creditors.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

90.   Consequently, the Transfers were inherently fraudulent pursuant to Florida Statutes Section 726.105(1)(a).

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

91.   Because the Transfers were fraudulent under Florida Statutes Section 726.105(1)(a), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

92.   As a direct and proximate result of the Receivership Entities fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities,

including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

## COUNT II
## FRAUDULENT TRANSFER UNDER§ 726.LOS(L)(B), FLA. STAT., FLORIDA UNIFORM FRAUDULENT TRANSFER ACT

The Receiver re-alleges and incorporates by reference the allegations in paragraphs l through 79 of this Complaint:

**ANSWER:**   The Giannotti Defendants incorporate their responses to the allegations in paragraphs 1 through 79 of the Complaint as if set forth here.

93.   This is a claim to avoid and recover a fraudulent transfer pursuant to Florida Statutes Section 726.105(l)(b).

**ANSWER:**   Admitted.

94.   As detailed above, the Receivership Entities made the Transfers to Defendants.

**ANSWER:**   The Giannotti Defendants incorporate their responses to the detailed allegations above as if set forth here. The Giannotti Defendants deny the remaining allegations of this paragraph.

95.   Defendants received the Transfers from Receivership Defendants without providing reasonably equivalent value in exchange for the Transfers.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

96.     Any services that Defendants may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

**ANSWER:**     The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

97.     Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendants, as detailed above.

**ANSWER:**     The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

98.     At the time that Receivership Entities made the Transfers to Defendants, Receivership Entities were operating a fraudulent scheme, were insolvent, and were engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

99.     Receivership Entities made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

**ANSWER:**     The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

100.     At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

101.   Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

102.   When Receivership Entities made the Transfers to Defendants, Wells intended to incur, or believed or reasonably should have believed that they would incur, debts beyond its ability to pay them as they became due.

**ANSWER:**   The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

103.   Because the Transfers were fraudulent under Florida Statutes Section 726.105(1)(b), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

104.   As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

## COUNT III
## FRAUDULENT TRANSFER UNDER§ 726.106(1), FLA. STAT., FLORIDA UNIFORM FRAUDULENT TRANSFER ACT

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

**ANSWER:**    The Giannotti Defendants incorporate their responses to the allegations in paragraphs 1 through 79 of the Complaint as if set forth here.

105.    This is a claim to avoid and recover fraudulent transfers, pursuant to Florida Statutes Section 726.106(1).

**ANSWER:**    Admitted.

106.    As detailed above, the Receivership Entities made the Transfers to Defendants.

**ANSWER:**    The Giannotti Defendants incorporate their responses to the detailed allegations above as if set forth here. The Giannotti Defendants deny the remaining allegations of this paragraph.

107.    Defendants received the Transfers from Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

108.    Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendants, as detailed above. Indeed, Defendants made no payments and provided no other value to Wells or the Receivership Estate.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

109. And the services that Defendants purported to provide to Receivership Entities or Receivership Estate did not provide any value to the Receivership Entities because they only facilitated the Fraudulent Scheme. All the funds that Defendants received from the Receivership Entities were derived from the investors that Receivership Defendants had defrauded. Therefore, Defendants profited from Receivership Defendants' fraudulent scheme at the expense of the investors that the Receivership Defendants defrauded.

**ANSWER:** The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

110. Receivership Entities had creditors whose claims arose before Receivership Entities made the Transfers to Defendants.

**ANSWER:** The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

111. When Receivership Entities made the Transfers to Defendants, the assets remaining in Receivership Entities' business were unreasonably small in relation to the business or transaction.

**ANSWER:** The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

112. When Receivership Entities made the Transfers to Defendants, Receivership Entities were operating a fraudulent scheme and thus intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

**ANSWER:** The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

113. Because the Transfers are fraudulent under Florida Statutes Section 726.106(1), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

114.   As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

### COUNT IV
### UNJUST ENRICHMENT AS TO THE TRANSFERS

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 of this Complaint:

**ANSWER:**   The Giannotti Defendants incorporate their responses to the allegations in paragraphs 1 through 79 of the Complaint as if set forth here.

115.   The Receivership Entities conferred a benefit on Defendants when they made the Transfers to Defendants, all of which were derived from defrauded investors of the Fraudulent Scheme.

**ANSWER:**   The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

116.    Defendants had knowledge of the benefit they received from Receivership Entities as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

117.    It is inherently unfair and inequitable that the funds of investors defrauded in the Receivership Entities' fraudulent scheme are retained by and used to personally benefit Defendants, rather than being returned to the Receivership Estate for the benefit of all the defrauded investors.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

118.    As a direct and proximate result of Defendants' retention of the Transfers that the Receivership Entities fraudulently transferred to each Defendant, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendants should return the funds it received from the Receivership Entities, and any assets it may have acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

**ANSWER:**    The Giannotti Defendants deny the allegations of this paragraph to the extent that they are alleged against them. The Giannotti Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

## DEMAND FOR JURY TRIAL

The Giannotti Defendants demand trial by jury on any and all issues in this action triable by a Jury.

## AFFIRMATIVE DEFENSES

The Giannotti Defendants reserve the right to rely upon the following affirmative defenses in response to the claims asserted in the Complaint to the extent supported by evidence later developed or facts later learned, without now assuming the burden of proof on any such defense that would otherwise rest on the Receiver while also reserving the right to amend or supplement their responses to the Complaint and their affirmative defenses as information is gathered through discovery.

### FIRST AFFIRMATIVE DEFENSE

1.      The Giannotti Defendants acted in good faith and transparently from the very beginning of their dealings with the Wells real estate investment opportunity, including the Receivership Entities, as that term is defined in the Complaint, and continuing throughout those dealings. The Giannotti Defendants took all transfers made to them in good faith and for a reasonably equivalent value as set forth in Florida Statutes § 726.109(1).

2.      The Giannotti Defendants are Illinois companies focused on aiding Chicago's Hispanic community. For almost 14 years, Financial Rescue has been dedicated to the Chicago Hispanic community's quality of life by providing access to better services and benefits including health insurance plans, funeral planning, life insurance, property exemptions, and basic retirement decisions. Financial Rescue does this work in collaboration with attorneys focused on wills, trusts and power of attorneys. Through its work, Financial Rescue has developed a strong reputation in and become a trusted advisor to Chicago's Hispanic Community.

3.      Mindful of that reputation and consistent with its dedication to Chicago's Hispanic Community, the Giannotti Defendants, acting through Financial Rescue, conducted over a year of due diligence to understand the businesses related to the Wells Real Estate

Investment, including speaking with analysts, attorneys, realtor, and other business professionals during multiple visits to the Sanders Family Office ("Sanders") offices in San Antonio, Texas. Additionally, the Giannotti Defendants went to West Palm Beach to tour the buildings and thoroughly investigate Wells and its real estate investment opportunities (the "Wells Real Estate Investment"), including meeting with agents invited by Sanders or Wells, custodians, and various other professionals regarding the businesses generally, the Wells Real Estate Investment, and the Receivership Entities, and visiting the properties and businesses associated with the Well Real Estate Investment in West Palm Beach.

4.      Initially, the Sanders Family Office ("Sanders") played a critical role in the recruitment of the Giannotti Defendants, presenting the Wells Real Estate Investment as a legitimate investment opportunity. Sanders made the initial invitation to the Giannotti Defendants to participate in this project on October 7, 2020, by sending a recruiter named Ricardo Aguirre to visit the Giannotti Defendants.

5.      Well aware of the Giannotti Defendant's professional reputation in the Chicago Hispanic community , Mr. Aguirre was very insistent on meeting with the Giannotti Defendants. Working with Margarett Sanders, Mel Sanders, Luke Sanders, Sean Sanders, and Rhiannon Sanders, Mr. Aguirre promoted the Wells Real Estate Investment opportunity through weekly Webinars in Spanish, elegant brochures, binders, business cards, and other promotional materials. Some of the promotional sessions remain available on YouTube, including at https://youtu.be/p1orSMH2KC0 and https://youtu.be/8WUWXtD0qYE, both last visited on December 10, 2025.

6.      Sanders, again primarily through Mr. Aguirre, handled all of the documentation for investments made by investors, including the negotiating and preparing promissory notes, the exchange of electronic documentation and electronic signatures, and providing general

guidance and instructions for investors about how to complete their investments, including how to wire funds to Well's Bank of America account.

7.      Margaret Sanders, Luke Sanders Mr. Aguirre were very persistent in recruiting the Giannotti Defendants and convincing them to participate in the Wells Real Estate Investment by referring potential investors. On three different occasions they invited the Giannotti Defendant to travel to San Antonio, Texas to take the time to evaluate the legitimacy and transparency of the Wells Real Estate Investment along with many other investment projects throughout the Caribbean Islands and the Bahamas.

8.      In these conferences, Sanders used credible real estate professionals, sophisticated investors, wealthy and high net worth individuals, and special guests to speak about various investment topics, all intended to recruit the Giannotti Defendants to assist by referring investors. Margaret Sanders did an incredible job of hosting these promotional events, giving out gifts such as books, shirts, bags, and expensive pens. She also encouraged people to win awards and recognition for being fully involved and engaged with the Sanders' model of referring investors to these projects.

9.      The Giannotti Defendants spent over six months conducting due diligence on Sanders generally and the Wells Real Estate Investment, including the projects generally, the people involved, and all the players before deciding to invite some people with whom the Giannotti Defendants worked to participate in the webinars, conference calls, and other promotional efforts being conducted by Sanders. Once the Giannotti Defendants began making those invitations, Sanders, again led by Margaret Sanders, made sure that all interested parties had access to Spanish speaking representatives both at Sanders' office and at the Wells office located in West Palm Beach.

10.     The Sanders also attempted to make potential investors feel confident in their projects, including the Wells real Estate Investment, by translating the promissory notes to Spanish and showing the potential investors that there was no possibility of loss due to the controls provided for in those documents. Sanders regularly spoke about the reliability of the Wells Real Estate Investment by touting the collateral of the real estate assets that were already in the portfolio of properties under the control of Wells, as well as the cash on hand, that was referred to as a back-up measure in case of last minute cancellations or refunds to investors due to illness or family emergencies. In addition to this information, the Giannotti Defendants also reviewed all the documentation that Wells and Sanders presented for the transaction, including the Promissory Note, Memorandum of Indebtedness, the Collateral Assignment and Security Agreement, the Custodial Agreement, and other related documents.

11.     Sanders also reassured all the potential investors by explaining the importance of the custodian, Panorama Capital, a company owned and managed by William Clover. Mr. Clover, Sanders explained, was a wealthy and well-connected individual that would be responsible for making every investor whole with their investment due to his interest in the success of this project. Sanders emphasized to potential investors how their promissory notes detailed the responsibilities of the custodian and how those responsibilities added to security of their investments.

12.     Sanders, led by Margaret Sanders and Luke Sanders, also explained the importance of the promissory note as a measure of protection for the Giannotti Defendants, explaining how the promissory note purposely separated any liability coming from the potential investors, the projects, and any other parties involved due to the separation of liability agreed by the investors from the referring activities of the Giannotti Defendants. Sanders further reassured the Giannotti Defendants that the investors referred would be 100% safe with their

investment due to the collateral of the real estate already in possession and the responsibility of the custodian who had authority and permission of Wells to take control of their operations.

13.     Both the Custodial Agreement and the Collateral Assignment and Security Agreement were put together by Janalie Bingham and Margaret Sanders and their legal team of advisors in support of Wells Real Estate Investment for the purpose of further insuring the safety of the investors deposits. The Giannotti Defendants relied on the information provided by Sanders regarding these two documents as a critical part of the decision to begin referring potential investors to Sanders .

14.     The Giannotti Defendants also relied on the experts introduced by Sanders in deciding to begin referring potential investors to Sanders. These experts included a financial analyst named David who presented a thorough analysis on Sanders real estate investment opportunities, including the Wells Real Estate Investment. The Giannotti Defendants spoke to David on several occasions during which he reassured the Giannotti Defendants that the Wells Real Estate Investment had great promise.

15.     Based on this investigation, the Giannotti Defendants, like the other victims of the alleged Ponzi scheme, believed the Receivership Entities' business to be a legitimate real estate venture and began referring interested investors who then made investments with the Receivership Entities.

16.     In return for those investments, the Giannotti Defendants received payments from the Receivership Entities. This was no different from numerous other legitimate business arrangements in which the Giannotti Defendants received payments for helping to arrange services or investments.

17.     Thus, for each payment that the Giannotti Defendants received from the Receivership Entities, the Receivership Entities received something of reasonably equivalent value.

18.     At the time that the Receivership Entities made those payments, the Giannotti Defendants had no knowledge of any issues regarding investments made with the Receivership Entities.

19.     Accordingly, the Giannotti Defendants took all transfers made to them in good faith and for a reasonably equivalent value, meaning the Receiver cannot recover on its claims against them.

## SECOND AFFIRMATIVE DEFENSE

20.     The Giannotti Defendants incorporate paragraphs 1 through 19 as if set forth here.

21.     At all times relevant to the Complaint, the Giannotti Defendants acted in good faith and had no actual knowledge of the Receivership Defendants' alleged Ponzi scheme as described in the Complaint and provided services of reasonable equivalent value in exchange for any transfers made to them.

## THIRD AFFIRMATIVE DEFENSE

22.     The Giannotti Defendants incorporate paragraphs 1 through 21 as if set forth here.

23.     The transfers at issue in the Complaint were made to the Giannotti Defendants for a legitimate business purpose, namely in exchange for helping the Receivership Entities obtain additional investments at a time when no one involved in deciding to make the investment, including the Giannotti Defendants, knew that the investments were being made to support an alleged Ponzi scheme.

## FOURTH AFFIRMATIVE DEFENSE

24.     The Giannotti Defendants incorporate paragraphs 1 through 23 as if set forth here.

25.     To the extent that the Giannotti Defendants provided value to the Receivership Defendants in exchange for the transfers made to the Giannotti Defendants, pursuant to Florida Statutes § 726.109(4), the Giannotti Defendants are entitled to (a) a lien on or a right to retain any interest in the transfers made to them; (b) enforcement of any obligation incurred; or (c) a reduction in the amount of the liability on any judgment entered.

## FIFTH AFFIRMATIVE DEFENSE

26.     The Receiver's claims as set forth in the Complaint are barred by the applicable statutes of limitations and/or repose.

Dated: December 10, 2025                    Respectfully submitted,

**DEFENDANTS FINANCIAL RESCUE
& ASSOCIATES LLC and
GIANNOTTI FAMILY OFFICE LLC**

By:  /s/ Gary I. Masel

Gary I. Masel
Florida Bar No. 26532
MAXSON MAGO & MACAULAY LLP
101 NE 3rd Avenue, Suite 1500
Fort Lauderdale, FL 33301
gmasel@em3law.com

Michael B. Cohen (*pro hac vice application to be filed*)
Max A. Stein (*pro hac vice application to be filed*)
MAXSON MAGO & MACAULAY LLP
77 W. Wacker Drive, Suite 4500
Chicago, IL  60601
mcohen@em3law.com
mstein@em3law.com